Jackson *vs.* Jackson.

---

ROBERT H. JACKSON, administrator, plaintiff in error, *vs.* NANCY JACKSON, administratrix, defendant in error.

1. In a suit on a note, a verdict finding for the plaintiff "principal, interest and cost," not stating the amount, is equivalent to finding the sum which the declaration shows on its face to be due, and is sufficiently definite.

Jackson *vs.* Jackson.

2. A note given during the war, in renewal of another made before the war, is not subject to be scaled under the Ordinance of 1865; where the defendant offers slight evidence that the renewed note was given by way of compromise of the old debt, about which there was some dispute, and that it was agreed that it should be paid in Confederate money, but the evidence is indefinite in its character, and the jury disregard it, the Court should not disturb the verdict on this account.

3. A new trial will not be granted on the ground that the Court permitted plaintiff's counsel to ask a witness if he knows of any other transaction between the parties other than the one about which he is called to testify, especially if he answer in the negative, even where it is to the plaintiff's advantage to show that there had been no other.

4. This Court cannot undertake to decide upon the validity of objections to evidence, where the bill of exceptions only states that the evidence was objected to and the objection overruled, without stating the ground of the objections.

5. Proof that the maker of a note was trying to borrow Confederate money with which to pay it off, is no proof that the note was payable in Confederate currency, or that the payee had agreed to receive such money in payment, especially when the testimony fails to show any knowledge on the part of the payee of the attempted loan, and was properly rejected.

6. That a third person "as defendant understood was agent of plaintiff" (defendant so testifying) is no proof of the agency, and was properly rejected.

7. It is no error to refuse to permit an agent to testify as to the contents of a letter received from his principal, who had left the State, to the effect that if he (the principal) could get a good place in Georgia, he would move back, even though the letter was shown to the plaintiff with a view of effecting a purchase from him, the letter itself not being offered in evidence, though in possession of defendant, and the contents stated being irrelevant.

8. Evidence of a witness, since deceased, given on a former trial of the same case between the same parties, reduced to writing and agreed upon by counsel, is admissible on a subsequent trial.

9. It is not error to submit to the jury the question of payment of taxes under the Relief Act of 1870, at the same time the other issues involved are submitted to them.

10. There was no error in charging the jury "that they should, in their verdict, find separately upon two issues, to-wit: first, whether or not it was necessary for the plaintiff to file his affidavit of payment of taxes in this case; secondly, whether the pencil entry on the note was a memorandum of sale on a credit."

11. Whether an entry in pencil on a note as follows: "Received on the within note the amount of my cotton, at twenty cents per pound, March 18th, 186—," not signed, and testified by one of the witnesses

Jackson *vs.* Jackson.

to be in the same handwriting with the body and signature of the note, was a credit, or simply a memorandum from which another entry, in ink, which was a credit, was made was properly submitted, under the evidence in this case, to the jury.

12. It is not error in the Court to fail to give in charge an oral request of counsel, made in the course of his argument to the jury, or in failing to charge any principle not requested in writing.

13. If a difference exists between the Court and counsel as to what took place on the trial, and the Court calls upon other counsel, who were present but not in the case, to aid his memory, and becomes satisfied as to what is the true state of the facts as they occurred, it is not error to refuse to hear all of the defendant's counsel, having already heard two of them.

14. A party who is induced to enter into a contract through the fraud of the other party to the contract, may repudiate the contract or claim an abatement of the price he has agreed to pay, to the extent of the damage suffered. To make this rule applicable, there must first be proof of the fraud.

15. Assignments of error so indefinitely stated as to leave this Court uncertain as to the error complained of, cannot be considered.

16. Where it is necessary to lay the foundation for any proof proposed to be made, by preliminary proof, the Court must necessarily determine, in the first instance, whether the preliminary proof has been made, in order to decide whether the evidence sought to be introduced to prove the main fact is admissible or not.

17. The judgment of the Court below will not be reversed for immaterial errors.

18. Where an agent purchases for his principal property, which the agent has full opportunity of examining, and about which no misrepresentation is made by the other party, and there is no evidence of trust or confidence reposed, requiring the seller to state any deterioration which may have occurred since the principal last saw the property, if the property should prove of less value than the agent and his principal supposed, it is no ground for rescinding the contract or abating the price.

19. The verdict is not contrary to law, equity, evidence, nor the weight of evidence.

Verdict. Renewal note. Scaling Ordinance of 1865. Immaterial error. Bill of exceptions. Assignment of error. Evidence. Proof of agency. Evidence of deceased witness. Relief Act of 1870. Practice. Request to charge. Fraud. Principal and agent. Motion for new trial. Before Judge WRIGHT. Heard county. At Chambers. March 26th, 1872.

Nancy Jackson, as administratrix upon the estate of James Jackson, deceased, brought complaint against Robert H. Jackson, as administrator upon the estate of Alfred H. Jackson, deceased, for the sum of $5,216 32, besides interest, alleged to be due upon the following promissory note:

"$5,216 32.                              "February 9th, 1863.

"One day after date I promise to pay James Jackson, or bearer, five thousand two hundred and sixteen dollars and thirty-two cents.    (Signed)

                                        "A. H. JACKSON."

Credits.    Received 18th March, 1863, $2,150 50, it being for twenty bales of cotton sold on the 18th of March, 1863.

By $700 00, 25th of April, 1866.

        (Signed)                      JAMES JACKSON.

(Pencil credit.)    Received on the within note, the amount of my cotton, at 20 cents per pound.    March 18th, 186...

The defendant pleaded the general issue; Confederate money consideration; that if any portion of said note was given for land, it must have been for the settlement whereon defendant's intestate resided at the time of his death; that plaintiff's intestate sold to defendant's intestate said land when defendant's intestate resided in the State of Arkansas, and was not present himself at the time of said purchase, but bought it by letter correspondence, and was influenced to make said purchase solely from the representations of said plaintiff's intestate in reference to the condition and value of the same, which representations were untrue.

The jury returned a verdict as follows: "We, the jury, find that it is not necessary to file affidavit in this case. We, the jury, also find and regard the writing in pencil as a memorandum and nothing else. We, the jury, also further find for plaintiff, principal, interest and cost."

The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because said verdict was indefinite, and is in law no finding in the case.

2d. Because the verdict was contrary to the charge of the Court, and contrary to law.

3d. Because the verdict was contrary to the evidence, to equity and to law in the trial of such cases under the Relief Acts of Georgia and the Ordinance of 1865.

4th. Because, when plaintiff's counsel asked J. Barnett if he knew of any other transaction between Alfred and James Jackson, except about the land, the Court overruled the objection of defendant to said question.

5th. Because the Court overruled defendant's objections to the second, third, fourth, fifth, and sixth interrogatories to, and answers of John F. Moreland, which are as follows, to-wit:

2d. "What do you know of a promissory note of which the following is a copy (note sued on with credits?) When did you examine and inspect the note of which the foregoing is a copy, and for what purpose did you examine it? Give time and place as nearly as you can?"

"I was one of the appraisers, and also one of the distributors of the estate of James Jackson. I recollect distinctly about the pencil entry referred to on the back of the note. The date of said entry was legible then as 1863. The figure '3' was perceptibly dimmer then than the '186,' but was legible."

3d. "In whose handwriting is the body or face of the note, and by whom signed?"

"I do not know. I feel confident, however, that the body of the note and the signature is the same handwriting."

4th. "In whose handwriting is the credit of the 18th of March, 1863, which is signed by James Jackson?"

"The credit of March, 1863, referred to, is in the handwriting of John Douglass, and the signature to said credit is in the handwriting of James Jackson, deceased."

5th. "In whose handwriting is the entry written with pencil of March 18th, 186.., for cotton at twenty cents per pound? Please state the date of the entry, or state what the

last figure of the date is which is dim? State how you come to know what the date is, or what the obscure figure is, to-wit: the pencil entry or memorandum?"

"The pencil entry referred to is in the same hand writing as the body and signature of the note in question. The date of said entry is March 18th, 1863. The last figure is a ' 3.' I know it from having carefully examined it at the time of the appraisement and distribution of the estate of James Jackson, deceased, as answered in reply to second interrogatory."

6th. "Please state what similarity there is in the writing of the note, and whether the writing is by the same hand? State what has been your business, calling your attention to handwriting, or anything else showing that you are an expert?"

"There is a very great similarity in the handwriting of the body, and the signature to the note, and the pencil entry on the back of the note. I have in mind the formation of t, th, d, in the face of the note, and in the pencil indorsement referred to ....... In the year 1858 I became a bank agent, and transacted a great deal of business in that capacity until after the war came on, and during the war, in March, 1864, I was appointed Confederate States Repositary, which appointment I filled until the war closed, and at present, I am cashier of the LaGrange Banking and Trust Company, of LaGrange, Georgia. I have endeavored to fill all these offices carefully and diligently, and may, therefore, be considered an expert. Examinations of handwritings and comparisons so as to guard against counterfeits, constitute an important part of a banker's business."

6th. Because R. M. Jennings was asked to state all he knew of Alfred Jackson's trying to borrow any money, to pay off James Jackson, about the time he saw him hauling cotton to LaGrange. To which question plaintiff objected, unless in the hearing and presence of James Jackson, which objection was sustained by the Court.

7th. Because R. H. Jackson stated that he had had conversations with Josiah Jackson, "who, as he understood, was agent

of Nancy Jackson." To which answer plaintiff objected and the objection was sustained by the Court.

8th. Because R. H. Jackson being on the stand, testified that he received a letter from Alfred Jackson, which he showed to James Jackson, and then there proposed to show what the letter said as to being dissatisfied with Arkansas and if he could get a good place in Georgia, he would remove back to Georgia, saying he had the letter in his hand. On objection made by plaintiff, the evidence was excluded by the Court.

9th. Because the Court erred in the following ruling; defendant's counsel asked R. H. Jackson, "you knew the condition of the land when Alfred moved to Arkansas, of the subsequent injury to it, and of the value of the payments that were made: Now, state whether or not the payments made amount to as much as the value of the land, in its real condition, when sold?" Plaintiff's counsel objected on the ground that no sufficient foundation had been laid by proving fraud on the part of James Jackson. The Court said in substance, that the defendant had not laid the foundation for such proof. Defendant's counsel stated that he hoped the Court would not intimate any opinion as to the testimony. The Court said it had not done and counsel should not intimate that it had; that in the admission or rejection of testimony the Court had a right to consider what had or had not been proven, and that counsel had stated that they would prove fraud and had not done so; that the defendant had taken up his evidence, as it were, backwards, and evidence should not proceed on this line, unless counsel would state in their place, they expected to establish fraud on the part of James Jackson. The defendant contended that the evidence was admissible. 1st. As applied to the misrepresentations or concealments of James Jackson. 2d. Under the Relief Ordinance of 1865. Finally, the Court stated that he might ask the value.

10th. Because the Court erred in allowing the agreed brief of testimony of Hope Cook, given in on a former trial, to be read, the witness being dead. Also, in allowing his evidence

of the present value of the land to be read over the objections of defendant.

11th. Because the Court erred in having the issue tendered as to the question of the payment of taxes, under the Act of 1870, tried with the case, and in not ordering a jury to try that collateral issue separately, upon the suggestion of defendant's counsel.

12th. Because the Court erred in charging the jury as follows, to-wit: "That they should in their verdict find separately upon two issues, to-wit: 1st. Whether or not it was necessary for plaintiff to file an affidavit of the payment of taxes in this case. 2d. Whether the pencil entry on the note was a memorandum of sale or a credit."

13th. Because the Court erred in not receiving from counsel before he commenced his charge the written requests to charge, which counsel notified him that he had and in instructing counsel to wait until he completed the delivery of his charge.

14th. Because the Court erred in charging the jury as follows, to-wit: "That if they believed from the evidence, that it was agreed and contracted between the parties that this note should be discharged in Confederate money, then it was their duty to subject the debt to the Ordinance of 1865, and to find upon principles of equity," and in failing to charge that "in that event it was the duty of the jury to scale the note by the value of Confederate money as compared to greenbacks," and in failing to charge the jury that "the burden of proof on a note dated February 9th, 1863, and due one day after date, is on the plaintiff to show it was in renewal of a transaction previous to June 1st, 1861."

15th. Because the Court erred in limiting the jury in the charge to the consideration as to whether the pencil entry on the note was a credit or a memorandum, and allowing them to find that issue at all, that being in effect construing the same, and in failing to charge them as requested by defendant's counsel in argument, "that if they believed the note or any entry on it had been altered or become obliterated, the presump-

Jackson *vs.* Jackson.

tion of law is against the party from whose custody it comes into Court, and if they believed the alteration or obliteration unintentional, provided they can discover what the writing originally was to their satisfaction to a moral certainty, they will execute the instrument, but unless fully and clearly satisfied, they should hold the paper void."

16th. Because the Court erred in charging the jury as follows, to-wit: "That, in cases of conflict, it was their duty to reconcile the testimony," and in charging no more on that subject, and in failing to charge the jury as to the weight of positive testimony as compared to negative testimony.

17th. Because the Court erred in charging the jury relative to the evidence given in as to the facts of the sale, and whilst charging on the effect of fraud, misrepresentation and concealment, in not going further and charging as requested by defendant's counsel in argument, as follows, to-wit: "If the jury should believe, from the evidence, that Alfred Jackson agreed to the sale of the land, under a mistake of fact that arose from no fault or agency of his as to the condition of any part thereof, then it was their duty to allow defendant the proven difference, if any, between the value of the land in the condition it was at the time he knew it and at the time of sale."

18th. Because the verdict of the jury is in plain and palpable violation of the charge of the Court, as follows, to-wit: "That if they should find for the plaintiff, they must set forth the specific amount of principal in dollars and cents, with interests and costs of suit."

19th. Because the Court erred in the following ruling: As soon as the verdict was received and published, counsel for defendant objected to the same as being no sufficient finding, and objected to its being placed of record. Upon counsel for plaintiff saying that they were willing to accept the verdict as it was, the Court allowed it to go to record.

20th. Because, during the hearing of the motion for a new trial, the Court having stated a difference to exist between himself and counsel for defendant concerning the statements

set forth in the ninth ground of the motion for a new trial, when exceptions were taken to the Court's remarks in the presence and hearing of the jury, about the evidence, and after the Court had heard the versions of B. H. Bigham, C. W. Mabry, J. A. Speer and Hugh Buchanan, the first two stating that they were substantially correct, as set forth, and the last two that something of the kind had occurred, counsel for defendant suggested that the Court then and there hear the evidence of L. H. Featherston, one of defendant's counsel, and of J. A. Ponder, clerk of the Superior Court. The Court refused to pursue this course.

21st. Because the whole charge of the Court is error, failing to give to the jury a clear statement of the law of the case, confining and limiting them to certain issues, and giving to certain issues undue importance, and failing to charge so that all and each part of the evidence would receive its due weight, and especially in charging, in substance, that it was the duty of a party injured by being deceived, under the rules laid down, when he discovered he was deceived, to promptly call the attention of the vendor to it, and offer the property back.

The Court charged the jury as follows, to-wit:

"In considering this case, you are the exclusive judges of the facts. It is my duty to give you in charge the principles of law, and there my duty ends. Defendant's counsel have raised an issue that the note sued on was given between June 1st, 1861, and June 1st, 1865, and that, therefore, it is the duty of the plaintiff to file the affidavit of the payment of taxes required by the Act of 1870, and prove the same. I will read you the sections of that Act bearing on the issue." (Here the Court read the first and fifteenth sections of the Act which provide that where the defendant is in possession, at the commencement of the suit, of the property, for the purchase of which the debt was contracted, then such tax affidavit and proof is unnecessary.)

"Plaintiff contends that this note falls within the exception. Thus, you see, the issue is made. Upon it your first

investigations are to take place, and upon it you are to find a separate finding. It is next contended that this note falls within the Ordinance of 1865, usually called the Scaling Ordinance." (His Honor here read the Ordinance, including the proviso.) "If you believe it falls within the Ordinance, you can consider the value of the consideration, or of the currency contemplated by the parties, or both. You may run either schedule. You have large powers—equitable powers. Your province is great. But if you should believe from the evidence, that a trade for land was made previous to June 1st, 1861, and that this note was given in renewal of the same, and on the same consideration, then it does not fall within the Ordinance of 1865. But if you should believe that, at the time of such renewal, it was the agreement and contract of the parties that it was to be paid in Confederate money, whether the original consideration was for land or not, it is subject to the Ordinance of 1865, and to be decided upon principles of equity.

"Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another. Misrepresentation of a material fact, made willfully to deceive, or recklessly, without knowledge, and acted upon by the opposite party, or if made by mistake, and innocently, and acted on by the opposite party, constitutes legal fraud.

"Suppression of a fact, material to be known, and which the party is under obligations to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case. Any relation shall be deemed confidential arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct and interest of another; or where, from similar relations of mutual confidence,

the law requires the utmost good faith, such as partners, principal and agent. If one party sells land to another, and the party purchasing has no opportunity of examining the land, but relies solely upon the representation of the person from whom he is buying, and the property so bought does not come up to the representation, for instance, as to soil, the quantity of bottom land, its eligibility for a site for a town, city or village, or any other special purpose, it is a fraud, and would authorize either a rescission of the contract or damages, at the option of the purchaser.

" If a fraud be practiced upon a party, it is the duty of the party upon whom it is practiced to take advantage of it within a reasonable time after its discovery, either by an offer to rescind the contract, or to have the same canceled; and if a party acquiesce for a long time, and does not propose, after the discovery, to repudiate the contract, but retains possession, and if bought on a credit, makes payments or renews the note, the presumption of law is that he waives the fraud, and he cannot afterwards set it up.

" Upon a question of fraud in the sale of lands, the testimony should be restrained to its value at the time of sale, and not its present worth, in order to fix the damages, and the rule of damages for a false representation, or the suppression of a fact material to be known, and which a party is under obligation to communicate, is that there must be a deduction from the agreed price in proportion to the article's departure in value from said agreed price.

" The construction of a contract is a question for the Court. The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction. The intention of parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning. Where any matter of fact is involved, (as the proper

Jackson *vs.* Jackson.

reading of an obscurely written word,) the jury shall find the fact. Thus, you remember, that upon this note there appears to be two entries: one in pencil writing and the other in ink. It is for you to determine what this pencil entry means; whether it is intended as a credit or as a memorandum of a sale, and upon this it is your duty to make a separate finding, and declare in your verdict how you regard it.

"All verdicts must be either for the plaintiff or defendant, and in matters of debt, in dollars and cents. If you should believe that this pencil entry was intended as a credit, you must ascertain from the evidence how much cotton was sold, and at what price. There is a maxim of law that that is certain that can be rendered certain. If there be an entry on a note, that, of itself, is unascertainable, before a jury can make a finding upon it, there must be evidence to explain and render certain that which, without the proof, is uncertain. Then if you believe from the evidence that this entry in pencil writing was intended as a distinct credit, independent of any other entry, and is not the same cotton as that referred to in another entry on the note, in ink writing, and there is evidence to satisfy you of the quantity and price of said cotton, then it is your duty to find such a credit in favor of the defendant. But if you believe it to be the same cotton referred to in the writing in ink, then you should so declare in your verdict. If you believe from the evidence that between the 1st of June, 1861, and the 1st of June, 1865, the decedents— that is, James Jackson, in his lifetime, and Alfred H. Jackson, in his lifetime—agreed that this note, given originally for land, before there was such a currency as Confederate money, and after there was such a currency, should be paid in this currency, and it was the intention of the parties that this should be the kind of currency, it was competent for them to do so. It was a new contract between them, and falls within the Ordinance of 1865.

" Now, gentlemen, it is for you to consider all the evidence given, and to find either for the plaintiff or defendant. In cases where there is apparent conflict of testimony, you are to

strive to reconcile it so as to impute perjury to no one. If you find that this is such a case as requires the tax affidavit, you will so find, and that will be an end of the case. If you find that it is not such a case, you will set it forth in a separate and distinct statement to that effect, and next consider whether the pencil entry is a credit or memorandum of sale, and make a separate and distinct statement of your finding on that issue. If you find for the plaintiff, you must set forth distinctly, in dollars and cents, the sum you may so find, with interest and costs of suit, and the form of your verdict will be: 'We, the jury, find for plaintiff so many dollars and cents principal, with interest and costs of suit.' If you find for defendant, the form of your verdict will be: 'We, the jury, find for defendant.'"

The Court then inquired of counsel if they had any requests to submit, and none being presented he directed the jury to retire and make up their verdict.

To the ninth and other grounds of error, the Court adds the following note:

"Upon the trial of this case defendant's counsel proposed to prove the condition of the bottom land previous to the sale from James Jackson to Alfred H. Jackson, and that after Alfred H. Jackson had moved to the State of Arkansas, a certain mill-dam had broken and overflowed the said bottoms, thereby damaging the land; and the proposition was to prove the amount of damage, and to prove, generally, a change and depreciation in value of the lands in consequence of the said overflow, and counsel for plaintiff objected because they had laid no foundation for it, and the Court was about to sustain the objection, when defendant's counsel, B. H. Bigham, stated in his place that he desired to conduct his case in his own way, and that he expected to lay the foundation by proof of fraud upon the part of James Jackson, and the Court, with that promise, permitted him to go on with the testimony. When, afterwards, the same kind of proof was offered, plaintiff's counsel objected again; whereupon, the Court remarked, that defendant's counsel had stated in their place that they would

Jackson *vs.* Jackson.

lay the foundation for the testimony, and that if they did not do so, the Court would certainly rule out such testimony; whereupon, B. H. Bigham, counsel for defendant, expressed the hope that the Court would not express an opinion as to what had or had not been proven. To which reply the Court remarked that it had not expressed an opinion, and would not, and stated to counsel that he should not so intimate, because the Court has ever been, and was on that occasion, unusually cautious not even to intimate, much less express an opinion, and that the Court should charge the jury that if they understood the Court as intimating an opinion, much less expressing one, that they should disregard it, and the Court did so charge the jury. The Court did say that if it had expressed an opinion as to what had or had not been proven in ruling on points of testimony, the Supreme Court had decided it not to be error. The Court expressed no opinion as to what had or had not been proven, but did remark that, in this case, the defendants had, as it were, commenced their testimony, or taken it up, backwards, and that the Court would not permit it again, as parties insisted that the foundation had been laid upon one side, and it was denied upon the other, thereby producing confusion. Counsel did refer to several decisions of the Supreme Court construing the Ordinance of 1865, which nobody disputed, and which decisions gave large discretion to juries, which the Court did charge to the jury fully."

To the twelfth ground of error the Court adds the following note:

" The Court charged the jury that they must find what the pencil entry meant, and then, upon the hypothesis of its being a credit or a memorandum of sale, see charge annexed on that point."

To the thirteenth ground of error the Court adds the following note:

" Defendant's counsel, B. H. Bigham, came upon the bench and asked the Court at what time did it require the written requests to charge to be handed in. The Court simply referred to the rule, but stated that its' practice was to charge

the jury, and, after it had got through, that if there were any requests, they could hand them to the Court, in writing, and that the Court would either charge them or decline, and that the Court hardly thought that he, B. H. Bigham, defendant's counsel, would be dissatisfied with the charge when the Court got through, to which he consented and retired, and when the Court got through with its charge, the Court called upon the counsel, both for the plaintiff and the defendant, if they had any requests further than had been charged, and the counsel for plaintiff had no requests, and B. H. Bigham, counsel for defendant, promptly responded that he had nothing to request, and was perfectly satisfied with the charge. The written requests were not even offered, only inquired of as to what time they should be presented, and they were neither refused or declined, but the charge was so full and so satisfactory to defendant's counsel that he did not offer the written requests."

To the fourteenth ground of error the Court adds the following note:

" The Court charged that the Ordinance of 1865, and Barber's Table of the value of Confederate money having been before them as evidence, if they believed it was the intention of the parties that the note should be paid in Confederate treasury notes, it fell within the Ordinance, or was subject to be scaled according to its value. The Court charged the jury that they must believe that the note was given for land, and that the defendant was in possession of it at the commencement of the suit, otherwise it would not come within the exceptions of the Relief Act of 1870. That possession by the administrator, the family of deceased, or the widow in right of dower, was such a possession as would bring it within the exception of the Relief Law of 1870, and relieve the plaintiff from filing the tax affidavit, and that this must appear by proof. That if the original note was for the land, and the note sued on was simply in renewal, it still was a land note, and within the exception of the Act of 1870."

To the fifteenth ground of error the Court adds the following note:

Jackson vs. Jackson.

"In regard to the memorandum the Court refers to his written charge, leaving it to the jury to find what the pencil entry meant. The Court is not clear as to whether it read section 2801 of the Code, but substantially charged it, particularly that the materiality of the alteration is a question of law, and the fact a question for a jury, (see section 2802,) and the Court then felt that it had gone further than it was authorized on that point by the testimony."

To the sixteenth ground of error the Court adds the following note:

"The Court did charge the jury that where the testimony of witnesses was conflicting, it was their duty to reconcile it if they could, (I speak in the past tense,) imputing perjury to no one, and that the testimony of those witnesses was entitled to the greater strength who had the best opportunity of knowing and the least inducement to perjury. I do not think I charged upon the subject of positive and negative testimony, nor was I requested, either in the argument or at any time. It might have been argued to the jury by counsel, nor do I now conceive that, under the evidence, there was a necessity for it."

The evidence is unnecessary to an understanding of the decision of the Court, and is, therefore, not set forth, beyond what is hereinbefore contained.

The motion for a new trial was overruled and defendant excepted upon each of the aforesaid grounds, and now assigns said rulings as error.

BIGHAM & WHITAKER; L. H. FEATHERSTON; C. W. MABRY, for plaintiff in error.

SPEER & SPEER, for defendant: Id certum est quod certum reddi potest: 40 Ga. R., 153. Declarations in party's favor illegal: 36 Ga. R., 380. Cook's evidence was legal: 39 Ga. R., 77; Code, sec. 3729. Separate trial of tax issue not requisite: 43 Ga. R., 315. Time within which sale must be repudiated: Story's Eq. Jur., sec. 203; 40 Ga. R., 205; Code, secs. 2166, 2168. Different result not produced, errors not considered: 42 Ga. R., 306; 41 Ibid., 507, 675; 37 Ibid., 101, 334;

36 *Ibid.*, 618; 30 *Ibid.*, 560, 857; 26 *Ibid.*, 171; 25 *Ibid.*, 540; 27 *Ibid.*, 334.

MONTGOMERY, Judge.

1. *Id certum est quod certum reddi potest* is too trite a maxim, and of too common application to need elaboration. The record and verdict, taken together, show the exact sum which the jury meant to find for the plaintiff. The finding is, therefore, sufficiently certain: *Mitchell vs. Addison*, 20 *Georgia*, 50.

2. The note sued on was given in renewal of one made before the war. To such a contract the Ordinance of 1865 was not intended to apply. It is expressly excepted by the proviso to the second section. There was some slight evidence offered on the part of the defendant that the note was given in compromise of the former debt, and was to have been paid in Confederate currency. This established, the contract would have been brought within the operation of the Ordinance. And, had the jury so found, we would probably not have disturbed the verdict. The difficulty is, they found otherwise, and the evidence in conflict with the verdict, on this point, is of too indefinite a character to warrant this Court in interfering.

3. The negative answer of Barnett to the question propounded to him, objected to in the fourth ground for new trial, was wholly immaterial and could not have prejudiced the defendant's case; that a man does not know of the existence of a fact is, generally, no proof of its non-existence, and it would be difficult to select a jury so little intelligent as not to understand this. The failure to prove the facts, on the part of the defendant, where it was his interest to make such proof, if possible, would have far more weight with them. The error here, if any, is too immaterial to warrant a reversal.

4. This Court has two or three times decided, that to warrant a reversal on the ground of the overruling of objections to evidence, by the Court below, the record must show what the objections were: 5 *Georgia*, 156, *Kollock et al. vs. Jackson;* 14 *Georgia*, 174, *Ingram et al. vs. Little;* 20 *Georgia*,

134, *Goodlittle vs. Roe*. We think this rule should be adhered to. Any other would entrap the Judge below; and operate as a surprise upon the other side. If interrogatories are objected to, because not properly executed, and the objection rightly overruled, would it be fair either to Court or opposite counsel to permit plaintiff in error to insist here that they were illegally admitted, because the witness for some reason was an incompetent one? Or, if a deed be objected to, on the ground that it only conveyed a life estate, (where it was important to show the grant of a fee,) and overruled, ought the party to be allowed to urge here that it is not properly recorded? If the nature of the question or objection would suggest the ground of objection, and exclude all others, perhaps that might be sufficiently definite. That is not this case.

5. The proof offered to show that Alfred Jackson was trying to borrow Confederate money, with which to pay off the debt, now sued for, was entirely irrelevant and would have established nothing pertinent to the issue if admitted. There was no knowledge shown on the part of James Jackson of this attempted loan for any such purpose, or indeed for any purpose, nor any consent by him to receive such payment. It simply was no part of the *res gestœ*.

6. R. H. Jackson's testimony, that he had had conversations with Josiah Jackson, "who as he (witness) understood was agent of Nancy Jackson," was clearly hearsay and no proof of the agency. It was properly rejected.

7. Upon what principle it was sought to admit R. H. Jackson's testimony of the contents of a letter which he held in his hand, we are somewhat at a loss to understand. The contents as far as disclosed were irrelevant. The letter itself was not offered in evidence. The fact that it was shown to James Jackson cannot make R. H. Jackson's testimony of its contents admissible.

8. Cook's testimony as given on a former trial, was reduced to writing and agreed upon as correct. Where the necessity of proving it under such a state of facts? In *Adair vs. Adair*, 39 *Georgia*, 75, just such evidence was held admissible. The

only substantial difference between that case and the present is, that there the witness had only left the State—here he is dead.   The difference in favor of the admissibility of the evidence is on the side of the case at bar.

9.  Section four of the Relief Act of 1870, does not provide for any separate trial of the issue as to whether the taxes on the contract sued on, have been paid or not.   It only makes it necessary for the plaintiff to prove the fact of their payment before he shall be entitled to recover.   If the jury are clearly satisfied that the taxes have not been paid, then under the Act, they must find that fact specially, not find generally for the defendant, upon which the case will be dismissed, leaving the plaintiff at liberty to commence a new suit, if perchance, his claim is not barred by the statute of limitations.   But when they find that the taxes have been paid, where the necessity of two trials when one answers every purpose?

10.  While a general verdict of so much for principal, with interest and costs, would have answered every purpose, the manner in which the jury rendered their verdict cannot be said to be objectionable, and the charge of the Court complained of in the twelfth ground for new trial, calling the attention of the jury separately to the issue, of the necessity of an affidavit of the payment of taxes was necessary, for *non constat*, that the jury would not find in favor of the defendant upon the tax issue, and if they did, that ended the case, so far as their duties were concerned.   If they found the tax issue in favor of the plaintiff, as they must have done from their verdict, it then became necessary for them to consider the pencil entry on the note, if it was a credit, their verdict would be for one amount, if it was not, for another.   Finding that it was not, it is true they might have found a specific sum as principal without further notice of the pencil entry, or they might have rendered a verdict as they did which made it sufficiently certain, as already indicated.   This objection goes more to the form than the substance of the verdict.   And we find no error in the charge of the Court submitting the issues to the jury in the manner complained of.

11. Whether the pencil entry was intended as a credit or as a memorandum, from which to make a credit entry in ink, was properly a question for the jury, under the evidence, and there was no error in leaving it to them. This entry in pencil was signed by no one, and was in the same handwriting with the body and signature of the note; in other words, in the handwriting of the maker. Counsel for defendant insisted it was a credit. It could only be so upon the hypothesis that the holder had authorized the maker to make the entry for him. Was this a question of law or fact? If the latter, it was the province of the jury to determine it.

12. When, in civil cases, counsel desires a charge made to the jury, they should request the same in writing; otherwise, they cannot complain of the failure of the Court to give it: *Street vs. Lynch*, 38 *Georgia*, 631, and authorities there cited.

13. This Court cannot undertake to prescribe to a Judge of the Superior Court how he must satisfy himself, on a motion for a new trial, as to what actually occurred at the trial. If a difference exist between himself and counsel as to what did occur, he will, doubtless, take every fair means of refreshing his memory. At least, we see nothing in the course pursued by the Court in this instance which calls for interference on our part. He heard two of the counsel for plaintiff in error give their recollection of the events as they occurred, and also heard counsel, who were present, but not in the case.

14. The abstract principle contended for by counsel for plaintiff in error, that a party who is induced to enter into a contract through the fraud of the other party to the contract, may repudiate the contract, or claim an abatement of the price he has agreed to pay to the extent of the damage suffered, is true. But the evidence fails to show any fraud on the part of the defendant's intestate. The land trade seems to have been sought by the intestate of the plaintiff in error, through the plaintiff in error, himself, as his agent, with full opportunity on the part of the latter to examine the premises, and no trust or confidence reposed in the vendor. How, then, is the principle applicable?

15. One or more of the assignments of error in this case is so indefinite as to leave us in doubt of what the plaintiff in error complains. The ninth ground for new trial, for instance, states that defendant's counsel asked the witness, R. H. Jackson, the following question : " You knew the condition of the land when Alfred moved to Arkansas, and of the injury, and of the value of the payments that were made; now state whether or not the payments made amount to as much as the value of the land, in its real condition when sold ?" This question is objected to, and a history given of an altercation between the Court and counsel, in which no distinct question is presented to the Court for adjudication. The ground concludes : " Finally, the Court stated he (counsel for plaintiff in error,) might ask the value. The Court erred in all these rulings and decisions, and in each of them." It will be noted that but one ruling is made, and that in favor of plaintiff in error. The credit on the note showed the payments made, and the witness was permitted to testify to the value of the land. What, then, are the rulings and decisions complained of in this ground ?

16. While not distinctly made, as above intimated, one additional point we do gather from the ninth ground for new trial, which is, that the Court had no right to determine whether the defendant had, by proof of fraud on James Jackson's part, laid the foundation for proving the value of the land to be less at the time it was bought than the price agreed upon. The Court claimed this right, and stated that the defendant had not made this preliminary proof, but, nevertheless, permitted the value of the land to be proved, as above stated. We think the Court was correct in claiming the right to determine, in the first instance, whether sufficient proof had been offered of fraud, on James Jackson's part, to let in proof which would entitle the defendant to an abatement of the price agreed to be paid. This must necessarily be so. Unless fraud was proved, the defendant was not entitled to an abatement. When plaintiff's counsel objected to proof of the price, the Court was the only tribunal who could determine whether

defendant's preliminary proof had entitled him to go outside of his contract. The final determination of the question of fraud was, of course, for the jury.

17. Many of the errors complained of are of that immaterial character, conceding them to be errors, as will not warrant a disturbance of the verdict, and, hence, they are disposed of by the general rule, that the judgment of the Court below will not be reversed for immaterial errors.

18. The evidence shows that the land was purchased by R. H. Jackson, as the agent of Alfred Jackson, from James Jackson, with full opportunity of examining the land; that no misrepresentation was made by James Jackson; that there was no relation of trust or confidence between the parties. Under such facts, there is no rule of law which requires a vendor to state any deterioration which may have occurred in the value of the land since the principal last saw it. If the land prove of less value than the agent or his principal supposed, it is no ground for rescinding the contract or abating the price. If a person, *sui juris*, make a contract which proves to be a bad one, the Courts cannot help him in the absence of fraud on the part of the person with whom he contracts.

We find no error in the verdict, from any cause.

Judgment affirmed.