# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1903.

---

### ANDREWS v. THE STATE.

1. All evidence is admitted as of course, unless a valid ground of objection is interposed, the burden being on the objecting party to state at the time some specific reason why it should not be admitted. A failure to make such objection will be treated as a waiver, and prevent the court, on a motion for a new trial, from inquiring as to the competency of the evidence.

2. A specific battery does not necessarily tend to establish one's general character for violence : and on a trial for murder, where it was sought to show the character of the deceased for turbulence, it was inadmissible to prove a particular act of violence.

3. A witness can not be impeached by introducing a record of his conviction for misdemeanor, it not appearing that the offense for which he was found guilty was one involving moral turpitude.

4. There was no evidence that the accused provoked the assault by the use of opprobrious words, and therefore it was proper to refuse to give the charge taken from the opinion in *Butler* v. *State*, 92 *Ga.* 602 (5).

5. Where the court, of its own motion, prevented defendant's counsel from asking a particular question of the State's witness, an exception to such ruling must in some way indicate wherein the defendant has been injured by the exclusion of the answer.

6. The special requests, so far as proper, were covered in the court's general charge, which was full and fair ; the verdict was supported by the evidence, and the court did not err in overruling the motion for a new trial.

Submitted March 16, — Decided April 6, 1903.

Indictment for murder. Before Judge Roberts. Montgomery superior court. February 7, 1903.

Andrews was indicted for murder, and found guilty, with a recommendation to mercy. He excepted to the refusal of a new trial. There were no eye-witnesses to the homicide. According to the defendant's statement he had armed himself on receiving an in-

sulting and threatening message from the deceased.; when they sub-
sequently met, the deceased had cursed him and forced him to go
some distance for the purpose of settling their difficulty; the de-
ceased was approaching him with a hoe held in a threatening atti-
tude; defendant warned him not to approach nearer, and, the warn-
ing being disregarded, defendant shot the deceased in self-defense.
According to the dying declaration of the deceased, he was shot
while getting over a fence, without cause or provocation except
that arising from some previous insulting messages passed back and
forth between the contending parties. He was not armed, and had
left the hoe in his own field. The opinion gives the substance of
the material grounds of the motion for a new trial, except those al-
leging that the court erred in charging as follows: (*a*) "It is al-
ways competent to show the character of the deceased for violence,
where some man has been killed, — for peaceableness or violence;
and when that matter is put into the issue, you can take it into con-
sideration, and just what amount of consideration you would give
it would depend upon what the conduct of the man was at the time
he was killed. If he was attempting to commit some serious per-
sonal injury upon the other, perhaps he might be justifiable in deal-
ing with a man of desperate character differently from what he
would with one of not so violent character; but unless there was
something about the conduct of the deceased that made it necessary
to resort to violence in order to repel his attack, he would have no
more right to kill a bad man than he would to kill a good man."
(*b*) "Something has been said in reference to the character of the
defendant. Well, it is competent to put that character into issue,
to weigh against the probability of his committing the offense with
which he stands charged, but it is only to weigh against whether
or not the man committed the offense. I charge you that a good
man would have no more right to violate the law than a bad man;
but where it is made to appear from the evidence that a crime has
been committed, then character would not avail."

C. D. *Loud* and *J. B. Geiger,* for plaintiff in error.

*John C. Hart, attorney-general, John F. DeLacy, solicitor-general,*
and *Graham & Graham,* contra.

LAMAR, J.  A party offering evidence is not required in the first
instance to show that it is competent; for all evidence is admitted

as of course, unless a valid ground of objection is interposed by the opposite party, or by the court of its own motion to prevent the introduction of needless or irrelevant testimony. In a sense all evidence is prima facie admissible, and the burden is upon the objecting party to state at the time some reason why it should not be admitted. It will not be sufficient for him to say, "I object," or, "I object because the evidence is not competent" or "is inadmissible." The attention of the court must be called to the specific ground of objection at the time the evidence is offered, and a failure so to do will be considered as a waiver. The fourth, fifth, and sixth grounds of the motion for new trial assign as error that the court allowed certain evidence "over the objection of the defendant." It does not appear what the objection was, nor that the ground thereof was urged at the time the evidence was admitted. An unbroken line of decisions of this court hold that such an assignment of error can not be considered. *Meeks* v. *Lofley,* 99 *Ga.* 170 (2) ; *Jackson* v. *Jackson,* 47 *Ga.* 99 ; *Steed* v. *Cruise,* 70 *Ga.* 176 ; *Goodtitle* v. *Roe,* 20 *Ga.* 140 (4); *Christian* v. *State,* 86 *Ga.* 430 ; *Harris* v. *Lumber Co.,* 97 *Ga.* 465.

The character for violence both of the deceased and accused had been put in issue. The court properly refused to allow the defendant to prove specific acts of violence on the part of the deceased towards his wife. Ordinarily even the general character of the parties is inadmissible, and their conduct in other transactions is especially irrelevant. Civil Code, § 5159. In a trial for murder the general character of the deceased for turbulence and violence may be shown, but specific acts are inadmissible. *Pound* v. *State,* 43 *Ga.* 128; *Doyal* v. *State,* 70 *Ga.* 147; *Thornton* v. *State,* 107 *Ga.* 687. On the same principle the general character of a witness for truth may be shown for the purpose of impeachment, but specific acts can not be made the subject of inquiry (Civil Code, § 5293), and for the reason that every man is supposed to be able at a moment's notice to establish his general character for truthfulness or for peaceableness; but the best, as well as the worst, might often be unable to explain a single transaction requiring the presence, not of any one familiar with him, but only the eye-witnesses of that special transaction, in order to justify, explain, or excuse. The general character of the deceased for turbulence or violence can be shown by his neighbors generally; the State and the accused alike

are put on notice that such general character may become an issue in the trial. But no one was bound to anticipate that the specific instance inquired about would be made the subject of investigation. A specific act does not necessarily tend to establish one's general character. The single transaction may have been exceptional, unusual, and not characteristic of the deceased. Where a witness has testified that one bears the character of being peaceable, it may sometimes be proper, on cross-examination, to inquire if the witness has not heard that the man whom he says was peaceable had in a particular case acted in a manner directly contrary to such reputation. *Ozburn* v. *State*, 87 *Ga.* 180. But this line of questioning is intended solely to test the truthfulness of the witness, and not for the purpose of making an investigation of the other transactions. To allow proof of specific acts of violence would prolong the trial, multiply issues, and confuse the jury.

A witness for the State, having testified that she had previously sworn in the case, was asked by defendant's counsel, " Did you swear then as you have now?" and it is alleged that the court erred in making the following remark: " I do not think you can ask her that question." While in the case of *Griffin* v. *Henderson*, 117 *Ga.* 382, it was suggested that the rule requiring counsel to state what the expected answer would be did not apply in cross-examination, it was not held that the motion for a new trial should not in some way indicate wherein the party had been injured by the exclusion of the answer, even in cross-examination. It does not appear from this assignment of error, as in *Mitchell* v. *State*, 71 *Ga.* 157, that defendant's counsel insisted that it was a proper question, or that he expected to show that the testimony previously given was the same or different from that which the witness had just sworn, or that the interruption was an interference with the right of cross-examination. The interference of the court seems to have been entirely proper and in accordance with the rule laid down in the Civil Code, § 5292, requiring that the attention of the witness should be specifically called to the alleged contradictory statement; for it must not be forgotten that the law has regard to the rights of the witness as well as those of the parties litigant. Civil Code, § 5281.

Error is assigned because the court refused " to charge on locus pœnitentiæ" or the effect of the prisoner's declining further combat. There was no special request to charge on the subject. It

is doubtful if the defendant's statement warranted the charge; but even if it had, where a theory depends solely upon the statement of the defendant, the court's failure to submit the same could not be considered as reason for granting a new trial. The general charge did, however, fully and fairly cover the issues raised by the evidence as well as by the statement of the defendant. The charge on the subject of the effect of the character of the deceased for violence was not erroneous. The case was fairly submitted to the jury. There was ample evidence to sustain the verdict, and the court properly refused to grant a new trial.

<em>Judgment affirmed. By five Justices.</em>