## 50436. WILLINGHAM v. THE STATE.

CLARK, Judge.

Following reversal by this court (*Willingham v. State,* 131 Ga. App. 851 (207 SE2d 249)) of his previous conviction, defendant was retried and again convicted on the original indictments of aggravated sodomy and aggravated assault with intent to rape. As was the result on the first trial, the jury under the bifurcated procedure set the sentence at the maximum for each offense: imprisonment for life and for ten years to run concurrently. In this appeal there are seven enumerations with which we will deal seriatim.

1. The first assignment deals with the facts, defendant asserting it was error to deny his motion for acquittal and that the verdict is contrary to the evidence and without evidence to support it.

In considering this question we have reviewed and compared the transcript of the first trial as similar contentions were made on that appeal. With the exception of three elements which will be mentioned hereafter, the material facts are nearly identical to those summarized at page 853 of this court's first opinion. Accordingly, we again rule in accord with that previous holding that there was no error in denying the defense motion for a directed verdict of acquittal.

We next turn to the three factors to determine if a new trial should be granted. These three matters exist here because of a change in trial tactics. Whereas the accused took the stand in his own behalf on the first occasion, he elected not to do so at his second trial.[1] Thus the evidence presented is substantially as before with these exceptions: First, there was no evidence that "defendant wore a larger size shoe" than that which had left the incriminating impression by the window through which entry had been made. Second, the defendant's personal alibi testimony was not presented. Third — and

---

[1]This may have benefited the accused in that the jury at the first trial reached its verdict in 7 minutes whereas the second jury deliberated 4 hours and 45 minutes.

most important — the victim made a positive voice identification of the defendant based upon her having heard his voice in the previous trial.[2]

That the crime was committed was not in doubt — the corpus delicti was established by direct and uncontroverted evidence. What was in question, however, was the identity of the victim's assailant.

We are bound to weigh the evidence as jurists, not jurors. Thus the question which confronts this court is whether the jury was afforded sufficient facts upon which to base its verdict of culpability.

We find three factors supporting the guilt of the defendant. One, the accused had borrowed a car on the night of the crime which was seen in the vicinity of the victim's residence shortly after the crime was committed. Two, a shoe track similar to one which would have been made by a shoe recovered from the borrowed car was found at the window of the victim's house. Three, the victim positively identified the voice of the defendant as being that of her assailant.

As to the third factor, we observe that although voice identification testimony is generally considered to be direct evidence (Wharton, Criminal Evidence § 189 (13th Ed. 1972); Annot., 70 ALR2d 995 (1960)), Georgia courts have construed such testimony to be opinion evidence, which, of course, is inadmissible unless the witness discloses the basis for his opinion. *Patton v. State,* 117 Ga. 230 (43 SE 533); *Henderson v. State,* 209 Ga. 238 (71 SE2d 628). But see *Taylor v. State,* 75 Ga. App. 205 (42 SE2d 926).

We also note that a witness may identify a defendant by voice recognition even though his knowledge of the accused's voice was acquired after the event to which the witness testified. *Worthy v. State,* 184 Ga. 402 (191 SE 457); *Taylor v. State,* supra. And the probative value to be accorded such evidence is a matter for the jury's determination. *Fussell v. State,* 93 Ga. 450 (21 SE 97).

Here the victim testified she recognized the defendant's voice when, during the first trial, the accused

---

[2]In defendant's first trial, the victim was unable positively to identify the accused's voice.

angrily raised his voice upon cross examination. Upon this basis, she identified the accused's voice as being the voice of her attacker.

Our conclusion is that the opinion and circumstantial evidence presented below was sufficient to authorize the jury's verdict. Although each of the three factors pointing to the guilt of the accused singly may fail to connect the defendant with the crime, the combination of those factors forms an ample foundation for the jury's verdict.

2. We next deal with the sixth enumeration. This avers "it was error to allow the victim in this case to testify over objection that she recognized the appellant's voice from his testimony at the first trial."

Perhaps in recognition of the necessary interdependence of the three factors creating guilt, defendant's diligent counsel sought to exclude this most vital link in the evidentiary chain. His objection below (and his appellate argument) may be succinctly summarized as follows: Upon the first trial of this case, the victim was presented as the first witness. At that time defendant's previous counsel and the district attorney stipulated that the victim would not be sequestered following her appearance on the stand but she would not be recalled to testify. When the prosecution subsequently sought to use her at the first trial in rebuttal after defendant had testified, defense counsel objected because this would be violative of the sequestration stipulation. That objection was sustained.

There was no similar stipulation at this second trial. In fact, recognizing the de novo aspect was the defense motion to have the victim sequestered "as her presence here in the presence of this jury is just going to make an impact in this case so much stronger against this defendant." (T. 4). The effect of the granting of a new trial by the appellate court, unless otherwise specifically directed, is to require a de novo trial thereof. *Anderson v. Clark,* 70 Ga. 362 (2); *Leventhal v. Baumgartner,* 209 Ga. 404 (73 SE2d 194). The re-trial was a new ball game with another umpire (a different judge) and a different pitcher (public defender as defense attorney).

As this type of stipulation is limited to the trial then

in progress and would not be applicable to a new trial resulting from defendant's successful appeal, the court did not err in admitting this evidence which constituted vocal verification.

Additionally, we should note that sequestration is sought to prevent witnesses from listening to testimony. Thus, sequestration could not be used ordinarily to prevent identification of an accused as to his physical characteristics. Vocal verification is analogous to visual verification.

3. The seventh enumeration contends that the victim should not have been permitted to testify as to what transpired at the line-up since she had signed a written statement as to what she had observed at that time. Defendant's assertion is based upon an erroneous interpretation of the "best evidence rule" (Code Ann. § 38-203). This mistake seems to persist despite appellate decisions and legal writers explaining its limitation to written documents. See *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470, 473 (193 SE2d 860); *Hightower v. Berlin*, 129 Ga. App. 246, 248 (5) (199 SE2d 335); and Green, Georgia Law of Evidence, § 100, p. 236. "The term 'best evidence rule' is misleading. This is really a preferential rule giving first preference to the original writing. . . The rule has nothing to do with evidence generally, but is restricted to writings alone. The Georgia statute states: 'The best evidence which exists of the fact sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for.' *This statute has been clearly construed to apply only where the contents of a writing are in issue. Where the existence of a fact is the question at issue and not the contents of a writing, then oral and written evidence of the fact may both be primary evidence.*" 11 EGL, Evidence § 60. (Emphasis supplied.)

4. Another evidentiary error is asserted with reference to an incriminating statement made to an investigating officer[3] shortly after the crime was

---

[3] The officer testified defendant said "[W]e were trying to blame on him the same thing that they did in Athens."

committed. This assignment is without merit. Although defendant had not then been warned of his constitutional rights, the statement was volunteered long before the defendant had been taken into custody and at a time when the investigation had not focused upon him. *Boorstine v. State,* 126 Ga. App. 90 (1) (190 SE2d 83); *Jones v. State,* 127 Ga. App. 137 (4) (193 SE2d 38); and see *Walker v. State,* 130 Ga. App. 597 (203 SE2d 890).

5. The remaining assignments assert the court's instructions to the jury were prejudicial and incomplete.

(a) The third enumeration asserts "It was error for the judge to include in his charge a total of 17 times that the jury must reach a unanimous verdict." Our examination of the transcript discloses that here this should be considered "quality" rather than condemned as "quantity." Of that number fifteen were occasioned by the judge using certain instructions recommended by the American Bar Association in 1968. He explained this source. In doing so, he placed these recommended directives near the conclusion of his initial charge and prior to the selected twelve commencing their deliberations.

When the jury later reported their inability to agree with their vote being 10 to 2 and without revealing whether the majority favored conviction or acquittal, the judge proceeded with the so-called "Allen charge."[4] This supplementary instruction recognizes the juror's duty to act on his individual opinion with due consideration to the majority's view. In doing so he used the words "unanimous verdict" only twice. The "Allen charge" is not coercive of the minority so long as it contains cautionary words such as here used: "no juror is required to surrender his or her honest opinion because of the honest different opinion of another juror or other jurors or for the purpose of reaching a unanimous verdict." There was no error. See *Yancy v. State,* 173 Ga. 685 (160 SE 867); *Ponder v. State,* 229 Ga. 720 (194 SE2d 78); *Smith v. State,* 85 Ga. App. 129

---

[4]This name derives from the 1896 decision of Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528). See extensive annotation in 100 ALR2d 177.

(68 SE2d 393). Compare *Ball v. State,* 9 Ga. App. 162 (70 SE 888); *Peavy v. Clemons,* 10 Ga. App. 507 (73 SE 756).

(b) Defendant urges that the charge was incomplete upon three grounds, the first of which is the court failed to charge on alibi. No request to charge the law of alibi was made and, as noted above, the defendant did not repeat his first trial alibi testimony below.

" 'It is well settled that where the evidence in support of the defense of alibi does not show the impossibility of the defendant's presence at the scene of the crime at the time of its commission, the failure of the court to charge the law of alibi, especially in the absence of a request for such a charge, is not error. *Ethridge v. State,* 163 Ga. 186 (14) (136 SE 72); *Smith v. State,* 6 Ga. App. 577 (65 SE 300).' *Cole v. State,* 63 Ga. App. 418, 420 (11 SE2d 239)." *Touchstone v. State,* 121 Ga. App. 602, 604 (174 SE2d 450).

As to the alibi contention, this was made an issue at the first trial by means of defendant's testimony. On this second trial the only evidence that might be construed in that direction came from M. L. Newton. This witness testified he did not know what time defendant arrived home but that it was "some time before day." This is not sufficient to establish the impossibility that defendant perpetrated this crime in the early hours of the morning, the victim having testified the time to have been around 3 o'clock.

(c) The charge was also incomplete, defendant contends, in that the court failed to inform the jury of our bifurcated trial procedure. While failure to explain the bifurcated trial procedure may be erroneous (*McRoy v. State,* 131 Ga. App. 307, 309 (8) (205 SE2d 445)), it cannot be said to be harmful error. To warrant reversal errors must be harmful. *Cauley v. State,* 130 Ga. App. 278, 288 (203 SE2d 239). "Legal error" is a compound of error and injury. *Avary v. Avary,* 202 Ga. 22 (41 SE2d 314).

6. The remaining enumeration states that "The court erred in failing to charge that the offense of aggravated assault is a reducible felony." This contention is correct. Under the bifurcated procedure in which the sentence was set by the jury, the decisions of our appellate courts held that under Code Ann. § 26-3101 it was

mandatory upon the trial court in those felonies punishable by imprisonment for a maximum term of 10 years or less that the jury be informed that it might recommend the defendant be punished as for a misdemeanor. *Ezzard v. State,* 229 Ga. 465, 467 (6) (192 SE2d 374); *McGregor v. State,* 119 Ga. App. 40, 41 (2a, b) (165 SE2d 915); *McRoy v. State,* 131 Ga. App. 307 (6) (205 SE2d 445). Because of this error the case is remanded for the limited purpose of imposition of a new sentence upon the guilty verdict as to Count 2, assault with intent to rape. See *Lingo v. State,* 226 Ga. 496 (1) (175 SE2d 657); *Johnson v. State,* 126 Ga. App. 757, 760 (191 SE2d 614); *Queen v. State,* 131 Ga. App. 370 (205 SE2d 921).

*Judgment affirmed in part and reversed in part. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED MARCH 11, 1975 — DECIDED APRIL 23, 1975.

*J. Cleve Miller, Public Defender,* for appellant.
*Clete D. Johnson, District Attorney,* for appellee.