## 66418. HOWELL v. THE STATE.

BANKE, Judge.

Howell was convicted of two counts of criminal solicitation to commit murder and one count of criminal solicitation to commit arson in the first degree. On appeal, he contends that the trial court erred in admitting into evidence a taped conversation between himself and an undercover agent and in allowing the jury to peruse a transcript of that recording. The appellant further asserts that the evidence demanded a finding that he had been entrapped.

In April 1982, Sam Coleman, an informant often utilized by the Florida Department of Law Enforcement, reported to that agency that the appellant had discussed with him a possible contract murder, and he further indicated that the appellant might have been implicated in the earlier murder of a Florida agriculture commissioner. The Florida agency responded by having Coleman and a department agent approach the appellant to negotiate the contract killing. After two contacts, the Florida department concluded that the appellant was unconnected with the earlier Florida murder, and the GBI then assumed direction of the investigation.

Coleman introduced the appellant to McMichen, a GBI agent posing as a hit man. After discussing the matter with McMichen on May 13 and May 17, 1982, appellant paid him $150 front money and agreed to pay him additional money as follows: $500 for the killing of Louis Raulerson, $100 for the killing of Mrs. Raulerson, $100 if the victims' house burned, and $100 if the deaths and destruction appeared to have been accidental. It was agreed that there would be no further contact between the appellant and McMichen between May 17 and the day of the executions. The appellant was arrested on May 18, 1982.

The appellant testified that Sam Coleman approached him in August 1981 with the proposal that the appellant hire him to kill someone or to arrange a big drug deal, and he asserted that over the next nine months, Coleman approached him again with the proposal

approximately a dozen times. He stated that just prior to the appearances of the Florida and Georgia undercover agents, Coleman threatened to molest his daughters unless he cooperated and agreed to the contract. Although at one point, the appellant testified that he realized the agent who first accompanied Coleman had been a Florida undercover agent, he subsequently testified that he had believed this agent was an authentic rip-off artist and killer. The appellant further stated that he had asked Coleman at one time if Richard Deas, a GBI agent, was behind the scheme and that Coleman had nodded his head affirmatively. Despite this claimed realization that the murder plot was a set-up, the appellant said he continued the negotiations with McMichen because he still feared that Coleman's threat to his daughters was genuine. He testified that he had intended to report Coleman's threats to some law enforcement department when he thought of one he could trust. *Held:*

1. Before a taped statement may be admitted, the state must establish: (1) that the mechanical device was capable of taking testimony; (2) that the operator was competent; (3) the authenticity and correctness of the recording; (4) that no changes, additions, or deletions were made; (5) the manner of preservation; (6) the identity of the speakers; and (7) that the testimony was not elicited through duress. *Page v. State,* 249 Ga. 648 (292 SE2d 850) (1982); *Brooks v. State,* 141 Ga. App. 725 (234 SE2d 541) (1975). The appellant contends that the trial court erred in admitting the taped conversation of May 17, 1982, between himself and McMichen because the state failed to establish either that the operator of the recording device was competent or that his statements were not elicited through duress.

The trial court did not err in finding that the state had established the requisite foundation for the admission of the taped conversation. The GBI agent who monitored and recorded the conversation of May 17, 1982, had also monitored a taped conversation of May 13, 1982; however, that tape was incomplete, and was consequently excluded by the trial court, because the agent had not realized that the recording mechanism was powered separately from the monitor. It appears that the agent experienced no further problems operating the machine, and there is nothing to controvert the agent's declaration of his own competency to operate the recorder.

With regard to the duress issue, the state presented evidence at the time of the admission of the tape recording into evidence that the appellant's testimony was not obtained through coercion or duress. The appellant's subsequent testimonial evidence of coercion at most created a jury question on the matter, and the trial court properly

charged the jury on that defense.

2. The trial court did not err in allowing the jury to refer to a transcript of the May 17 tape while the recording was being played at trial. The admission into evidence of such a transcript is permissible when a proper foundation has been laid. *Brooks v. State,* supra. In this case, the transcript actually was provided as a listening aid rather than proffered as evidence, and there is no contention that it was inaccurate. Moreover, the trial court instructed the jury at length that it must determine and evaluate the contents of the tape and was not bound to accept the accuracy of the transcript.

3. The evidence did not demand as a matter of law a finding that the appellant had been entrapped. The cases cited by the appellant as authority for a contrary conclusion rest on the state's failure to produce the confidential informant to rebut the defendant's entrapment testimony. See *Griffin v. State,* 154 Ga. App. 261 (267 SE2d 867) (1980); *Perry v. State,* 143 Ga. App. 227 (237 SE2d 705) (1977); *Coleman v. State,* 141 Ga. App. 193 (233 SE2d 42) (1977). The Supreme Court, however, has cautioned that a distinction must be made between evidence which raises the defense of entrapment and evidence which would demand a finding of entrapment. *State v. Royal,* 247 Ga. 309 (275 SE2d 646) (1981). "[A] defendant's testimony as to entrapment, even if unrebutted by any other witness to the alleged misconduct, will not entitle him to a directed verdict of acquittal unless that unrebutted testimony, together with all reasonable deductions and inferences therefrom, demands a finding that entrapment occurred." *State v. Royal,* supra at p. 310. Because the reasonable deductions and inferences drawn from the appellant's at times inconsistent testimony did not demand the finding of entrapment, the trial court properly submitted the issue to the jury; and the evidence before the jury was sufficient to enable any rational trier of fact to find the appellant guilty beyond a reasonable doubt. See generally *Crawford v. State,* 245 Ga. 89 (1) (263 SE2d 131) (1980).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED JULY 5, 1983.

*Richard M. Cowart,* for appellant.
*H. Lamar Cole, District Attorney,* for appellee.