## 67446. NORLEY v. THE STATE.

DEEN, Presiding Judge.

The appellant, Joseph Christopher Norley, Jr., was convicted for the possession of cocaine with the intent to distribute, in violation of the Georgia Controlled Substances Act. He was sentenced to four years imprisonment to be followed by six years probation, and this appeal followed.

In July 1980, Gert Karnitschnig approached GBI agent Tom Davis, offering his services as an informant for undercover narcotics investigations, and in September 1980, Karnitschnig first mentioned the appellant, who lived in Florida, as a possible drug dealer. With agent Davis' approval, Karnitschnig began negotiations with the appellant over the telephone, concerning the arranging of a sale of cocaine. Karnitschnig usually telephoned the appellant from agent Davis' office, and he agreed to tape record the conversations. Several telephone conversations between Karnitschnig and the appellant, and between agent Davis and the appellant, were in turn recorded on October 20, 1980 and November 11-12, 1980.

Karnitschnig initially attempted to arrange with the appellant a drug deal, involving three kilos of cocaine, at an airport in the Fort Lauderdale area, but none of the suggested arrangements satisfied the appellant. Eventually, the appellant agreed to transport to the Atlanta area a small test sample of the cocaine on December 6, 1980. Agent Davis and Karnitschnig met the appellant at the airport, and they drove to the parking lot of a fast food restaurant in Clayton County. The appellant then produced what he claimed to be a three and one half gram sample of cocaine, after which agent Davis placed him under arrest. Subsequent testing of the substance by the state crime lab was positive for cocaine.

At trial, the appellant acknowledged the taped conversations between himself, Karnitschnig, and agent Davis. He also admitted that he had transported to Georgia a small quantity of what he believed to be cocaine. However, he maintained that Karnitschnig, who had known the appellant for 6-7 years and who was aware of the appellant's financial distress, had convinced him to attempt the drug deal.

On appeal, Norley contends that a directed verdict of acquittal was demanded on the grounds that he had been entrapped; that the trial court erred in recharging the jury twice on the law of entrapment; that the trial court erred in allowing into evidence the taped conversations, because the tape recorder utilized by the state was not in good working order; that the trial court erred in not declaring a mistrial after the jury indicated that it was deadlocked in its deliberations; that the trial court erred in admitting evidence that the substance possessed by the appellant had been cocaine; and that the trial

court erred in excluding the certified conviction of Gert Karnitschnig for a misdemeanor offense of escape. *Held*:

1. OCGA § 16-3-25 provides that "[a] person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer." See also *Orkin v. State*, 236 Ga. 176 (223 SE2d 61) (1976); *Smith v. State*, 141 Ga. App. 529 (233 SE2d 841) (1977). The primary issue is whether the defendant was predisposed to violate the law; it is not entrapment where a government officer merely provides one predisposed to violate the law with the opportunity to do so. *Mafnas v. State*, 149 Ga. App. 286 (254 SE2d 409) (1979); *Johnson v. State*, 147 Ga. App. 92 (248 SE2d 168) (1978); *Orkin v. State*, supra.

The question of predisposition is generally one for the jury to decide. *Tolbert v. State*, 138 Ga. App. 724 (227 SE2d 416) (1976). After reviewing the evidence in this case, we conclude that the trial court properly submitted the question of entrapment to the jury. This case is not one involving the undisputed testimony of the accused that he had been entrapped. The evidence includes the testimony of Karnitschnig and agent Davis, as well as the taped conversations between the three parties, and this evidence sufficiently indicated the appellant's predisposition to consummate a drug deal. In short, while the evidence raised the defense of entrapment, necessitating a jury charge on the matter, it certainly did not demand a finding of entrapment. See *State v. Royal*, 247 Ga. 309 (275 SE2d 646) (1981); *Howell v. State*, 167 Ga. App. 294 (306 SE2d 378) (1983).

The appellant also contends that the trial court's instruction on the law of entrapment was incorrect. The jury instruction as given by the trial court was taken essentially from the statutory definition in OCGA § 16-3-25, and various glosses to that definition added by the appellate courts of Georgia; the instruction concluded by reminding the jury that the state had the burden of proving beyond a reasonable doubt that the appellant had not been entrapped. The appellant, nevertheless, asserts that such a charge was deficient because it did not specifically direct that the state had to prove *predisposition* beyond a reasonable doubt. We have previously approved essentially the same jury instruction on entrapment given by the trial court in this case, and we will not now impose the necessity of charging on the state's burden of proof individually with regard to every element of a disputed matter. *Frazer v. State*, 165 Ga. App. 331 (299 SE2d 104)

(1983).

2. "Before a taped statement may be admitted, the state must establish: (1) that the mechanical device was capable of taking testimony; (2) that the operator was competent; (3) the authenticity and correctness of the recording; (4) that no changes, additions, or deletions were made; (5) the manner of preservation; (6) the identity of the speakers; and (7) that the testimony was not elicited through duress." *Howell v. State,* supra at 295. See also *Steve M. Solomon v. Edgar,* 92 Ga. App. 207 (88 SE2d 167) (1955). The appellant contends that the requisite foundation for admissibility of the taped conversations was not shown solely because the tape recorder, which stopped momentarily on several occasions during playback of the tapes at trial, was obviously incapable of accurately taking testimony.

It must be noted that the recorder in question was used to tape the conversations in October and November 1980, while the trial occurred in April 1982. Agent Davis explained that during the interim he had used the recorder on numerous other occasions, that as recently as three weeks prior to the trial the machine had functioned properly, and that this playback problem had developed for the first time at the trial; this testimony was uncontroverted. Moreover, not only was there no showing of inaccuracy, but the appellant himself acknowledged the accuracy of the conversations. Under these circumstances, we find that the state completed the foundation necessary for admission of the taped conversations into evidence.

3. The appellant also contends that the trial court should have declared a mistrial when the jury indicated that it was deadlocked in its deliberations. The record shows that the jury began its deliberations at approximately 4:30 p.m. Shortly thereafter, a recharge of the law on entrapment was requested and given. A break for dinner lasted from 7:15 p.m. until 8:30 p.m., after which the jury resumed its deliberations. At 9:30 p.m., the jury reported that it was deadlocked, eleven to one, and the trial court gave an "Allen" charge. See Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). At 9:55 p.m., a second recharge on entrapment was given, at the jury's request, and at 10:50 p.m. the jury indicated that it was still deadlocked at eleven to one, although some progress had been made; the trial court then instructed the jury to decide whether it wanted to deliberate further or to discontinue. At 11:25 p.m., the jury returned its verdict of guilty, after which the jury was polled.

The specific "Allen" charge given by the trial court has previously been approved by the Supreme Court. *Spaulding v. State,* 232 Ga. 411 (207 SE2d 43) (1974); *Ponder v. State,* 229 Ga. 720 (194 SE2d 78) (1972). The appellant, however, asserts that under the circumstances of this case, the use of the "Allen" charge coerced the jury into reaching a verdict. Giving specific consideration to the possibility

of coercion resulting from the use of an "Allen" charge, this court has approved such a charge, if it includes cautionary instructions that the verdict must be the conclusion of each juror and not a mere acquiescence by the jurors in order to reach an agreement. *Herrin v. State,* 138 Ga. App. 729 (227 SE2d 498) (1976); *Willingham v. State,* 134 Ga. App. 603 (215 SE2d 521) (1975). In the instant case, the trial court gave those cautionary instructions, and its additional instruction that the jury should decide whether to continue its deliberations or give up, especially contraindicates any coercion by the trial court. There was no need to declare a mistrial.

4. The appellant next contends that the trial court erred in allowing into evidence the testimony of the state crime lab employee that the substance obtained from the appellant had tested as positive for cocaine, because the appellant was denied the right to have the substance analyzed by an independent expert. Due process endows a criminal defendant with the right to an independent analysis of an alleged controlled substance, although it is not an absolute and unqualified right. *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977); *Gilliland v. State,* 142 Ga. App. 374 (235 SE2d 780) (1977). In this case, the appellant timely moved for an independent analysis, and the trial court, by order dated September 18, 1981, granted that motion, giving him until October 12, 1981, to conduct the analysis, provided there was a sufficient quantity of the substance to allow proper testing. However, the state crime lab routinely destroys contraband that has been stored for a length of time, and in December 1981 or January 1982 it had destroyed the remainder of the substance that had been possessed by the appellant. The appellant had not sought to have any independent analysis conducted by the date of this destruction. Under these circumstances, by not timely utilizing the court-ordered opportunity to conduct the testing, the appellant waived any right to the independent analysis. Moreover, in this case, where the appellant admitted that he had believed the substance to be cocaine and where the sole defense was that of entrapment, there can be no serious contention that the appellant's defense was impaired by the eventual inability to obtain an independent analysis of the substance.

5. The trial court admitted into evidence, for impeachment purposes, a certified conviction of Gert Karnitschnig for theft by taking, but excluded a certified conviction for a misdemeanor offense of escape. The appellant contends that that misdemeanor conviction likewise was admissible to impeach Karnitschnig. " 'A witness can not be impeached by introducing a record of his conviction for misdemeanor, it not appearing that the offense for which he was found guilty was one involving moral turpitude.' *Andrews v. State,* 118 Ga. 1 (43 SE 852); *Howard v. State,* 144 Ga. 169 (86 SE 540)." *Groves v. State,* 175 Ga. 37, 42 (164 SE 822) (1932). Moral turpitude has often been de-

fined as " 'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Cit.]" *Huff v. Anderson*, 212 Ga. 32, 34 (90 SE2d 329) (1955); accord, *Lewis v. State*, 243 Ga. 443 (254 SE2d 830) (1979); *Ramsey v. State*, 145 Ga. App. 60 (243 SE2d 555) (1978). While the question has not yet been addressed in this state, the courts of Tennessee have held that "[t]he offense of escape does not involve moral turpitude and . . . [is] . . . not admissible for impeachment purposes." Munsey v. State, 496 SW2d 525, 527 (4) (Tenn. Cr. App. 1973). See also State v. Gavin, 328 NW2d 501 (3) (Iowa 1983), wherein a felony conviction for escape was held inadmissible for impeachment purposes.

In *Lewis v. State*, supra at 444, the Supreme Court held that the word "moral" preceding the word "turpitude" adds nothing to its meaning. On page 446 of the same case, however, the term "morals" (and other duties that one person owes another) is still included *in the test* used to determine turpitude: "Further applying the facts in the instant case, does the sale of cocaine, disregarding its felony punishment, meet the test as being *contrary to justice, honesty, modesty, good morals or man's duty to man*?" (Emphasis supplied.)

Legal philosopher John Austin, in *The Province of Jurisprudence Determined*, divides law into four types. The first and fourth classifications will not be considered here. (The first was divine laws of responsibility and the fourth was natural laws of the universe.) He lists the second and third as follows: (2) "Positive laws: that is to say, laws which are simply and strictly so called and which form the appropriate matter of general and particular jurisprudence"; and (3) "Positive morality, rules of positive morality, or positive moral rules."

Austin includes in the second category laws that appear to be morally neutral, that is, containing only (1) the naked command of the sovereign and (2) punishment if the duty or command is not fulfilled (e.g., for violating the speed limit or escaping, which would appear to be laws malum prohibitum). These are laws of utilitarian policy not embracing ethics or morals. In the third category, the legislative enactment seems to embrace, as Austin says, etiquette, ethics, values, morals, standards or norms of the community, which seem to be malum in se. In short, the third category appears to consist of cases involving moral turpitude while the second appears to consist of cases not including moral turpitude unless they constitute a felony in Georgia.

The judicial determination as to which category a case may fall within seems to be subjective and a case by case process. Compare the following writings: H. L. A. Hart, "Positivism and the Separation of Law and Morals," 71 Harvard Law Review 593-629 (1958); Fuller,

*The Morality of Law* (1963); Benditt, *Law as Rule and Principle* (1978). Hobbes, Holmes and Hart, and other legal realists, positivists, and pragmatists, advocated, albeit unsuccessfully, the separation of all laws from morals.

We conclude that the misdemeanor offense of escape does not involve moral turpitude, as interpreted by the above authorities, and thus the trial court properly excluded the evidence of such a conviction.

*Judgment affirmed. Quillian, P. J., Banke and Birdsong, JJ., concur. McMurray, C. J., Shulman, P. J., and Pope, J., concur in the judgment only. Carley and Sognier, JJ., dissent.*

DECIDED FEBRUARY 29, 1984 —
REHEARING DENIED MARCH 13, 1984 — 

*T. Michael Martin*, for appellant.

*Robert E. Keller, District Attorney, Mary Jane Stewart, Michael D. Anderson, Assistant District Attorneys*, for appellee.

CARLEY, Judge, dissenting.

I simply cannot agree with Division 5 of the majority opinion holding that it was not error to exclude evidence, offered for purposes of impeachment, showing that a state's witness had been convicted of the misdemeanor offense of escape. The rationale for the holding is, of course, the majority's conclusion that this misdemeanor did not constitute an offense involving moral turpitude. While I realize that the cases discussing what does and does not involve moral turpitude have been less than clear, I firmly believe that the crime of escape — even if classified as a misdemeanor — always involves "moral turpitude." In order to be convicted of the offense of escape, one must have "*intentionally*" escaped "from *lawful* custody" or confinement. OCGA 16-10-52. At the very least, the commission of this offense results in an "obstruction of justice." See *Lewis v. State*, 243 Ga. 443, 445 (254 SE2d 830) (1979). I believe that there was a proper showing that the witness in this case had been convicted of a misdemeanor involving moral turpitude and, therefore, I believe the trial court erred in excluding evidence of the conviction for impeachment purposes. Accordingly, I respectfully dissent.

I am authorized to state that Judge Sognier joins in this dissent.