## 75179. STEVANUS v. THE STATE.
(363 SE2d 322)

McMURRAY, Presiding Judge.

Via indictment, defendant was accused of burglary, aggravated assault, kidnapping, two counts of false imprisonment and giving a false name to a law enforcement officer. A jury convicted defendant of all of the charges except kidnapping. He was sentenced to serve 15 years (with 5 years probated) on the aggravated assault and false imprisonment charges, 5 years on the burglary charge and 12 months on the false name charge. All of the sentences were to be concurrent. Following sentencing, defendant moved for a new trial. The trial court denied the motion and this appeal followed.

Viewing the evidence in a light favorable to the verdict, we find the following facts: On December 19, 1986, just before 7:00 a.m., the victims awakened, and suddenly a light was turned on in their bedroom. Looking at the doorway, the husband saw an intruder. He was wearing a ski mask and was pointing a gun directly at the husband. The intruder instructed the victims to lie face down on the bed and place their hands behind their backs. Handcuffs were placed on Mr. Bittinger's wrists; his wife's hands were tied with wire. Duct tape was used to cover Mr. Bittinger's eyes; a red bandanna was used to blindfold his wife.

Mr. Bittinger asked the intruder if he intended to rob them. He said no. Then Mr. Bittinger asked the intruder if he was going to shoot them. He said probably not. Mrs. Bittinger inquired just what the intruder was going to do. He replied: "Well, Scott may have to take a little ride." (Mr. Bittinger went by the name "Scott." The victims testified that the intruder had not been given any tips about their names.) Thereafter, the victims engaged the intruder in further conversation. His voice was very familiar to them. He told them that

Mr. Bittinger "made someone very angry" and that he was being paid to bring Mr. Bittinger to see that "someone."

In the midst of the ordeal, the intruder placed the husband in the guest room for a period of time. The intruder and the husband continued to talk. During the conversation, the intruder said, "You'uns have a nice car." When the husband heard that expression, he knew the identity of the intruder "in a flash" — it was Bill Stevanus, the defendant.

Defendant, an Ohio native, was a friend of Mrs. Bittinger's sister. He met the victims at a wedding in Ohio in June 1986. Shortly thereafter, defendant and Mrs. Bittinger's sister visited the victims at their home in Woodstock, Georgia. They stayed about one week.

Defendant was a construction worker and jobs were hard to find in Ohio. When defendant expressed an interest in finding a job in Georgia, the victims graciously offered defendant a place to stay until he could get on his feet. In July, defendant took the victims up on their offer. When he arrived in Woodstock, the victims gave defendant a key and put him up in their guest bedroom.

Defendant got a job in Woodstock with a construction crew. After a couple of weeks, Mr. Bittinger suggested that defendant pay something towards room and board and defendant gave the Bittingers $100.

During his stay, defendant conversed with the Bittingers daily. He was a tennis player and he played tennis with Mr. Bittinger on several occasions. He was also a smoker.

Defendant did not have an automobile and he frequently expressed an interest in buying a 1978 Datsun 280Z which the victims were trying to sell. In Mr. Bittinger's words, defendant was "fixated on that car from day one." He began every conversation about the Datsun with the expression "You'uns have a nice car." ("You'uns" is an expression used in certain parts of Ohio and Pennsylvania. It is the equivalent of "y'all.") Except for the frame, the car was in good condition. It did not have any cracks in the dashboard (the victims kept a towel over the dash); it did not have high mileage. Defendant was not able to meet the victims' asking price, however, so he did not buy the car.

Defendant ended up staying with the victims for one month. When he left, defendant left the key which the victims had given him. He also left owing $150 in telephone charges.

When he realized that defendant was the intruder, Mr. Bittinger continued the conversation about the "nice car." He asked which car the intruder was referring to. The intruder replied that he was referring to the "Datsun-Z car." He said he "noticed there's no dash cracks and low mileage, 60,000 or so." Then the intruder went into the bathroom. Using their olfactory senses, the Bittingers could tell

that he smoked a cigarette. Returning to Mr. Bittinger, the intruder brought up the subject of tennis.

The intruder remained in the Bittinger's home for an hour and a half. During that time, he used the telephone frequently. To do so, it was necessary for the intruder to go to another floor in the house because he disconnected the telephone in the victims' bedroom. On one occasion, while the intruder was using the telephone, Mr. Bittinger stood up and the floor creaked. The intruder yelled, "Scott, Pat, where are you?" He bounded up the stairs to see what was going on. Satisfied that everything was all right, the intruder returned to the telephone. He dialed and, speaking loud enough for the victims to hear, said: "Bill . . . Well, I can't wait around here all day. I can't be seen here . . . Well, it's your money." He hung up the phone and went back upstairs. Leading Mr. Bittinger back into the master bedroom, the intruder said: "You're lucky. He changed his mind. I don't know why, but he changed his mind."

Approaching Mrs. Bittinger, the intruder stated: "You'uns should put dead-bolts on your doors. It was too easy to break in." Mrs. Bittinger replied that she had purchased such locks but had not installed them. At that, the intruder laughed. Then he confided that he had a problem. He was going to use the victims' automobile to take Mr. Bittinger for the "little ride," but the plan had been changed. He did not have an automobile and, therefore, he had no way of leaving hurriedly. The victims struck a deal with the intruder. They agreed to give him a 20-minute head start before they attempted to escape from their bonds. At that, the intruder made yet another telephone call. When he returned, he loosened the wire on Mrs. Bittinger's hands, left the key to the handcuffs, and made a swift exit.

Mrs. Bittinger freed herself and called the police. She then unlocked the handcuffs which had been placed on her husband. The police arrived in about a half hour. They found no signs of a forced entry. Fingerprints were taken at the scene but they were not clear, and could not be identified.

Neither victim was able to see the intruder — his face was well covered. But, based on the intruder's voice, the Bittingers identified him as their former houseguest. A few days later, defendant was arrested by the police. Initially, he informed them that his name was Albert J. Stevanus. The next day, defendant recanted. He told the police that he had given them a false name and that his real name was William Henry Stevanus.

At the trial, the victims made a positive voice identification of defendant. The Bittingers testified that they were familiar with defendant's voice and the the intruder and defendant were one and the same person. Mr. Bittinger described defendant's voice as "a medium low voice, monotone." He also identified defendant on the basis of his

laugh, which he described in some detail and characterized as being very distinctive. *Held*:

1. In his first enumeration of error, defendant contends the evidence is insufficient to support his conviction upon the burglary, aggravated assault and false imprisonment counts. In this regard, defendant argues that the identity of the intruder was not established by the evidence. We disagree. The voice identification testimony and the circumstantial evidence were more than sufficient to enable a rational trier of fact to find defendant guilty of the offenses for which he was convicted beyond a reasonable doubt. *Shepherd v. State*, 173 Ga. App. 499 (1) (326 SE2d 596).

2. Defendant complains that the trial court erred by refusing to strike Mrs. Bittinger's voice identification testimony. He maintains that this evidence was admitted improperly because a proper foundation for it had not been laid.

The evidence showed that Mrs. Bittinger had ample opportunity to be familiar with defendant's voice, having conversed with him on numerous occasions. After all, she testified that defendant was a guest in her home for a total of five weeks. She also testified that the intruder's voice was "very, very familiar." We think this was a sufficient foundation for the admission of her opinion testimony. *Shepherd v. State*, 173 Ga. App. 499, 500, 501, supra. The probative value of Mrs. Bittinger's testimony was a matter for the jury's consideration. *Willingham v. State*, 134 Ga. App. 603, 604 (215 SE2d 521); *Shepherd v. State*, 173 Ga. App. 499, 500, 501, supra.

3. The third assignment of error is wholly without merit.

4. OCGA § 16-5-41 (b) provides that "A person convicted of the offense of false imprisonment shall be punished by imprisonment for not less than one nor more than ten years." The trial court sentenced defendant to serve 15 years (5 years probated) upon each false imprisonment count. In this respect, the sentence is illegal. "Where a part of a sentence is legal and another part illegal, only that part which is legal can be given effect. *King v. State*, 103 Ga. App. 272, 277 (3) (119 SE2d 77). Therefore, the case is remanded with direction that appellant be resentenced in accordance with law." *Robinson v. State*, 169 Ga. App. 763 (315 SE2d 277).

*Judgment affirmed as to the convictions and case remanded with direction as to the sentences. Sognier and Beasley, JJ., concur.*

DECIDED NOVEMBER 19, 1987.

*David L. Cannon*, for appellant.

*Rafe Banks III, District Attorney*, for appellee.