## A98A0693. NOBLES v. THE STATE.
(503 SE2d 321)

SMITH, Judge.

Charles Nobles was found guilty in August 1996 by a Gordon County jury of two counts of child molestation and one count of aggravated child molestation. He did not file a motion for new trial or a timely notice of appeal. He filed an appeal in this Court, which was dismissed as untimely. He then filed a motion for an out-of-time appeal, which was granted on October 6, 1997. This pro se appeal ensued.

Construed to support the jury's verdict, the State presented evidence that Nobles and his wife were living in his uncle's home in Gordon County, along with a number of other people. His uncle's seventeen-year-old stepdaughter found Nobles in an upstairs bedroom with her seven-year-old stepsister. The child had her underwear and jeans pulled down and Nobles was pulling his shirt over his pants. She reported this to her mother, who together with her sister examined the child in the bathroom. They discovered that the victim's vagina was red and "puffy" and that a white lotion, like suntan lotion with a tropical scent, had been rubbed into her vaginal area. The victim told her mother that Nobles had rubbed it on her.

The victim's father made a report to the Gordon County Sheriff's Department, and Detective Laura McElrath was assigned to investigate. She interviewed the victim at her school along with a representative of the Department of Family & Children Services (DFACS) and a school counselor. This interview was preserved on audiotape, and the tape was played for the jury at trial. In that interview the victim stated that more than ten times her uncle had rubbed suntan lotion on her vagina and had ejaculated. When the victim testified at trial, however, she testified only that Nobles had rubbed suntan lotion on her vaginal area and that he cautioned her not to tell anyone or her father would "whoop" her. McElrath testified that based upon her interview with the victim, she examined the carpet in the bedroom with a black light, which indicated the presence of a protein on the surface. She then cut a small sample of the carpet and sent it to the State Crime Lab. A forensic serologist testified at trial, however, that his testing did not indicate the presence of semen on the carpet sample.

The State also presented evidence of a similar transaction. Nobles's fifteen-year-old stepdaughter from a former marriage testified that when she was about seven or eight years old, her mother was in the hospital and Nobles touched her vagina several times while they were watching television.

1. We conclude that the evidence presented at trial was sufficient to authorize Nobles's convictions under the standard set forth in

*Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Nobles contends he was not afforded effective assistance of counsel. Nobles failed to raise this allegation in the trial court, however, after being granted an out-of-time appeal. The grant of an out-of-time appeal "should be seen as permission to pursue the post-conviction remedies which would be available at the same time as a direct appeal." *Ponder v. State*, 260 Ga. 840, 841 (400 SE2d 922) (1991). It therefore includes the right to file a motion for a new trial. Id. And it follows that because a claim of ineffective assistance of counsel must be determined through an evidentiary hearing at the earliest practicable moment, such a claim may not be asserted in an out-of-time appeal unless it has been raised in a motion for new trial after the grant of an out-of-time appeal, and the issue has been raised and resolved at an evidentiary hearing. Id. at 841-842 (1). The holding in *Ponder* is specifically addressed to "appellate counsel" having secured an out-of-time appeal. Id. But the Supreme Court has also held that a pro se petitioner is in the same position. *White v. Kelso*, 261 Ga. 32, 33 (401 SE2d 733) (1991). We therefore conclude that Nobles waived his right to assert this issue on appeal.

3. Nobles's assertion that the trial court erred in permitting the audiotape of the victim's interview to be played to the jury because the State failed to lay an adequate foundation is completely without merit. Before a recorded statement may be admitted into evidence, the State must authenticate the tape and show how it was preserved and that no changes were made to the recording. In addition, the State must show the identity of the speaker; that the recording machine was working properly; that the machine's operator was competent; and that the testimony on the tape was not given under duress. *Howell v. State*, 167 Ga. App. 294, 295 (1) (306 SE2d 378) (1983). The State did exactly that in this case.

McElrath identified the persons present at the interview. She testified that she did not speak to the victim except to say hello and introduce herself before the recording began. She authenticated the tape and stated that she found the equipment and the tape to be in proper working order; that no changes had been made; and after transcription no one had access to it other than McElrath until it was turned over to the State. This sufficed to lay a foundation for playing the tape notwithstanding McElrath's testimony that she listened to the tape "just briefly" after turning it over to the State.

4. Nobles also contends the trial court erred in the cautionary instruction given to the jury before the tape was played. The State had prepared an edited transcript to enable the jury to follow the interview on tape. The transcription was passed out to the members of the jury. Before playing the tape, the court instructed the jury that the "written transcription is one person's interpretation of what was

said. If you find any discrepancies between the written transcription and the tape itself, you are to go by the tape and it is — that is, the tape itself is the highest and best evidence. This written transcription is just intended to be an aid to you in listening to the tape, but if there are any discrepancies, you are to use your best judgment as to what was actually on the tape as opposed to what was in the written transcription."

It is clear that this instruction did not refer to the best evidence rule, as urged by Nobles. That rule has absolutely no application under these circumstances; it applies only to writings. *In the Interest of F. L. P.*, 184 Ga. App. 164, 166 (2) (361 SE2d 43) (1987). Here, the court merely attempted to explain to the jurors that each of them must resolve any conflicts between what was actually heard and what had been transcribed by the State in favor of what was actually heard. This practice has been noted with approval by this Court. See, e.g., *Butler v. State*, 201 Ga. App. 58, 60 (410 SE2d 168) (1991).

Nobles is mistaken as well in his assertion that the trial court erred in allowing the tape to be replayed at the request of the jury. "It has been recognized for more than 100 years that it is permissible for the trial judge, in his discretion, to permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations. [Cits.]" *Byrd v. State*, 237 Ga. 781, 782 (229 SE2d 631) (1976). The court cautioned the jury that allowing the tape to be replayed is "not an indication on my part that I think it bears more weight than any of the other evidence presented in the case." We find no error.

5. Trial counsel did not request a charge on circumstantial evidence and secondary evidence. No objection was made to the trial court's failure to charge on circumstantial or secondary evidence. Relying on OCGA § 5-5-24 (c), Nobles nevertheless maintains this omission was reversible error. We do not agree. First, failure to give this charge is not necessarily error absent a request. *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995). "A defendant is relieved from the necessity of requesting instructions *only* where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. It is a rare case that does not include both direct and circumstantial evidence and the omission of a charge on circumstantial evidence as set forth in OCGA § 24-4-6 is not harmful or erroneous as a matter of law where there is some direct evidence and the jury is properly charged on reasonable doubt." (Citation and punctuation omitted.) Id.

Here, the State's case depended primarily on the victim's testimony, which was not circumstantial. The trial court instructed the

jury that "where circumstantial evidence alone is relied upon to establish a fact or a theory, it must be such as to reasonably establish that fact or theory rather than anything else. You're authorized to return a verdict of guilty only if the evidence as a whole, whether direct or circumstantial, is consistent with and establishes guilt beyond a reasonable doubt." This was not harmful or erroneous as a matter of law.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 23, 1998.

Charles E. Nobles, *pro se.*

T. Joseph Campbell, *District Attorney,* Sharon M. Fox, *Assistant District Attorney,* for appellee.